IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| NATALY MENDOZA, Special Administrator of the Estates of MARTHA RABADAN, MARIA MENDOZA and IGNACIO CASTRO, Decedents,<br><br>    Plaintiffs,<br><br>vs.<br><br>JUJHAR SINGH, BSB TRANSPORT, INC., and RELIABLE TRANSPORTATION SOLUTIONS, LLC.<br><br>    Defendants. | No.   4:20-CV-00270<br><br>Honorable Catherine D Perry |

**PLAINTIFF'S RESPONSE TO RTS'S
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

**I. INTRODUCTION**

The Eastern District of Missouri   recently joined the majority of federal district courts in holding that common law injury and death claims against brokers are not expressly preempted under the Federal Aviation Administration Authorization Act (FAAAA). *Uhrhan v. B & B Cargo, Inc* <u>2020 WL 4501104</u> (E.D. Mo. 8-5-20) *Uhrhan,* ignored by RTS*,* rejects the very argument made here and, in so doing, preserves the traditional right of states to provide a tort remedy for the carnage trucking negligence causes on interstate highways.

Martha Rabadan, and her parents, Maria Mendoza and Ignacio Castro, were victims of that negligence when a tractor-trailer hired by RTS slammed into the rear of their car on interstate 44 outside of St. Louis. All three were killed, leaving behind one spouse and seven children. The time-honored right of these survivors to seek justice against RTS has not been preempted under *Uhrhan,* or under the majority of decisions

1

Exhibit A

considering the issue. RTS's Motion for Judgment on the Pleadings should therefore be denied.

## II. LEGAL STANDARD

Preemption is an affirmative defense that RTS has the burden to prove with specificity. *Lupian v. Joseph Cory Holdings LLC,* 905 F.3d 130 (3d Cir. 2018); *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 489 n.4 (10th Cir. 1998). There is a *presumption against preemption in all cases*, but particularly in areas of traditional state regulation, such as tort law. *Wyeth v. Levine,* 555 U.S. 555, 565, n.3 (2009) (tort law); *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (tort law);*Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 886–87 (8th Cir. 2005) (tort law)(emphasis added). Courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth* at 565; *Bedoya v. American Eagle Express, Inc.* 914 F.3d 812, 822 (3d Cir. 2019) (claims based on laws embodying state police powers are presumed not to be preempted).

When considering preemption on a motion for judgment on the pleadings, the factual allegations relevant to preemption must be accepted as true and viewed in the light most favorable to the plaintiff. *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002); *Luney v. SGS Auto Servs.,* 432 F.3d 866, 867 (8th Cir. 2005). A "district court may find a claim preempted only if the facts alleged do not plausibly give rise to a claim that is not preempted." *Galper v. JP Morgan Chase Bank, N.A.,* 802 F.3d 437, 444 (2d Cir. 2015). Express preemption will be found only "when a federal law explicitly prohibits

state regulation in a particular field." *Mo. Brd. Of Examiners v. Hearing Help Express, Inc.* 447 F. 3d 1033, 1035 (8th Cir. 2006).

### III. ARGUMENT

**A. The FAAAA Does Not Expressly Preempt Negligence Claims Against Brokers**

Under the preemption clause of the FAAAA, common law tort actions are preempted only if they constitute a "law, regulation or other provision" and only if they relate to "a price, route, or service" of a broker regarding transportation of property.  49 U.S C. ¶14501(c)(1). Even if these two requirements are met, preemption will not apply if the injury or death action falls under the statutory exemption concerning "the safety regulatory authority of a state." 49 U.S.C. ¶14501(c)(2)(A).

To date, neither the Supreme Court nor the circuit courts have addressed whether Congress intended the FAAAA to shield brokers from personal injury and wrongful death negligence actions. The majority of district courts have held that these claims are not preempted, although the liability theories and decision rationales in the cases have varied. Overall, fourteen cases have rejected preemption in the injury or death context[1] and six cases have found preemption.[2] Of the cases rejecting

---

[1] *Ciotola v. Star Transp. & Trucking, LLC*  2020 WL 4934592 (M.D. Pa. 8-24-20); *Uhrhan v. B & B Cargo, Inc* 2020 WL 4501104 (E.D. Mo. 8-5-20); *Lopez v. Amazon Logistics, Inc.*, 2020 WL 2065624 at *8 (N.D. Texas 04/28/2020); *Ying Ye v. Global Sunrise, Inc.*, 2020 WL 1042047 at *3 (N.D. Illinois 03/04/2020); *Scott v. Milosevic*, 372 F. Supp. 3d 758, 769 (N.D. Iowa 2019); *Mann v. C.H. Robinson Worldwide, Inc.*, 2017 WL 3191516, at *7-8 (W.D. Va. July 27, 2017); *Morales v. Redco Trans. Ltd.*, 2015 WL 9274068 (S.D. Tex. Dec. 21, 2015); Nyswaner v. C.H. Robinson Worldwide Inc., 353 F.Supp 3d 892 (D. Ariz. 2019); Factory Mut. Ins. Co. v One Source Logistics, LLC, 2017 WL 2608867 (C.D. Cal. May 5, 2017); Montes de Oca v. El Paso-Los Angeles Limousine Express, Inc., 2015 WL 1250139 (C.D. Cal. March 17, 2015); *Hentz v. Kimball Trans., Inc.*, 2018 WL 5961732 (M.D. Fla. Nov. 14, 2018) *Owens v. Anthony*, 2011 WL 6056409, *3 (M.D. Tenn. Dec. 6, 2011); *Gilley v. C.H. Robinson Worldwide, Inc.,* 2019 WL 1410902, *5 (S.D. W. Va. March 28, 2019); *Finley v. Dyer*, 2018 WL 5284616 (N.D. Miss. Oct. 24, 2018).

[2] *Gillum v. High Standard, LLC*, 2020 WL 444371 at *5-6 (W.D. Texas 01/27/2020); *Loyd v. Salazar*, 416 F. Supp. 3d 1290, 1296 n.6 (W.D. Okla. 2019); Creagan v. Wal-Mart Trans., LLC, 354 F.Supp 3d 808, 813 (N.D. Ohio 2018), appeal filed, (6th Cir. June 12, 2019); Miller v. C.H. Robinson Worldwide, Inc., 2018

3

preemption, nine have done so, in whole or in part, on the basis that tort law has only a tenuous economic impact on broker services.³  Six cases have done so, in whole or in part, on the basis that tort law falls under the safety exemption.⁴ One case rejected preemption with regard to vicarious liability only. *Ying Ye* at 4.

B.     **Negligent Brokering Claims Are Not Preempted**

    1.     **Safety Exemption Applies**⁵

In arguing that Plaintiff's negligent brokering claim is preempted (Count IV), RTS ignores the recent contrary finding of Judge Ross in *Uhrhan* and the well-reasoned decisions of several other district courts in *Lopez*, *Gilley and Finely*. These Courts ruled that negligent broking claims are not preempted because they fall under the safety regulation exemption of 49 *U.S.C*. ¶14501 (c)(2)(A). The arguments made by RTS disputing the exemption were specifically rejected in *Uhrhan*, *Lopez*, *Gilley* and *Finely* and should be rejected here for the same reasons.

The FAAAA clearly states that the preemption clause "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 *U.S.C*. ¶14501 (c)(2)(A). This is known as the "safety exception" and it is to be broadly construed because the purpose of the FAAAA is to restrict state economic regulation and not safety  regulation. *City of Columbus v. Ours Garage and Wrecker Service, Inc*. 536 U.S. 424,426; *Gilley*, at 4; *Uhrhan*, at 4. The Supreme Court specifically stated that "Section

---

WL 5981840. *4 (D. Nev. November 14, 2018), appeal filed, No. 19-15981 (9ᵗʰ Cir. May 7, 2019); *Krauss v. IRIS USA, Inc*., 2018 WL 2063839. *5 (E.D. Pa. May 3, 2018); *Volkova v. C.H. Robinson C*o., 2018 WL 741441 (N.D. Ill. Feb 7, 2018).

3. *Ciotola*; *Gilley*; *Scott*; *Nyswaner*; *Mann*; *Factory Mut. Inc. Co.*;  *Hentz*; *Montes de Oca*; *Owens*

⁴ *Uhrhan*; *Lopez*; *Gilley*; *Finley*; *Morales*; *Mann*

⁵ Plaintiff begins with the last issue first because *Uhrhan*  was decided on the basis of the safety exemption. The inapplicability of the FAAAA generally is addressed in the next section.

4

14501(c)(2)(A) seeks to save from preemption state power in a field which the states have traditionally occupied." *Ours Garage*, at 426. This mandate for a broad construction has been recognized by several circuit courts as well. *California Tow Truck Ass'n v. City & Cty. Of San Francisco* 807 F.3d 1008, 1022 (9th Cir. 2015); *VRC LLC v. City of Dallas* 460 F. 3d 607, 612 (5th Cir. 2006). It has been said that courts must "decline to elasticize Congress's economic goal" by narrowly interpreting the safety exception. *Cole v. City of Dallas* 314 F. 3d 730, 734 (5th Cir. 2002). *Volkova* and *Loyd* cited by RTS are distinguishable because they incorrectly apply a narrow rather than a broad interpretation.

*Uhrhan, Lopez*, *Gilley* and *Finely* reject RTS's argument that a state's "safety regulatory authority" is limited to state-passed regulations. Congress repeatedly used the word "regulation" in other sections of chapter 14501 but used "regulatory authority" in the safety exception. *Lopez* at 7. The second and third areas listed in the safety exception refer to specific types of laws or regulations (vehicle weight, cargo type and insurance) whereas the first area refers to the "relatively open ended" concept of "regulatory authority." *Lopez* at 7  These contrasts suggest that "regulatory authority" is broader than "regulation" and that the term "focuses not on a specific type of law, such as regulation, but on state authority as it relates to a certain goal---safety." *Lopez* at 7.

Further proof that "regulatory authority" includes more than regulations lies in legal history. Common law tort liability has longed played an important regulatory role in the states' traditional responsibility to protect the health and safety of their citizens. *Uhrhan*, at 4; *Lopez*, at 7; *Gille*y, at 4; *Finely*, at 7. The fact that the enforcement mechanism is private action is "nondeterminative" because "state common law claims

5

exist by force of state authority." *Lopez*, at 7. *Miller* fails to recognize this and is therefore distinguishable, although it acknowledges that a state-law tort claim imposing a common law duty on a freight broker might be viewed as an exercise of a state's police power, and … a negligent brokering claim might be viewed as safety regulation." *Miller*, at 1300.

Count IV clearly outlines that RTS's negligence in selecting BSB and Singh created an unreasonable safety risk on Missouri highways. Based on *Uhrhan*, a common law negligent brokering claim exists as "a valid exercise of the state's police power to regulate safety." *Uhrhan*, at 4;  See also *Lopez*, at 7; *Gille*y, at 4; *Finely*, at 7. Limiting "regulatory authority" to regulations and excluding common law claims narrows the safety exception "where there is not 'clear and manifest' congressional intent to do so", in violation of the Supreme Court mandate. *Lopez*, at 7; *Wyeth*, at 565.

*Uhrhan, Lopez*, *Gilley* and *Finely* also reject RTS's argument that negligent brokering claims do not constitute an exercise of regulatory authority "with respect to motor vehicles." The Supreme Court has defined "with respect to" as "concerning." *Lopez*, at 7  (quoting *Dan's City Used Cars, Inc. v. Pelkey* 569 U.S. 251, 261). The FAAAA defines "motor vehicles" as a mechanically propelled vehicle used on a highway in transportation. 49 U.S.C. ¶13102(16). Read cohesively and broadly, the safety exception includes state authorized tort claims concerning motor vehicles and their safe operation on public highways. *Lopez*, at 7; *Uhrhan*, at 4; *Gille*y, at 4; *Finely*, at 7. RTS's narrow construction limits the exception to safety regulations "of a motor vehicle" or to motor vehicles over which defendant has control. This is inconsistent with preserving

6

traditional state police powers over safety while preempting state economic regulation. *Lopez*, at 7.

Based on *Uhrhan, Lopez, Gilley* and *Finely,* common law negligent brokering claims represent state authority regarding motor vehicles and operational safety.  As a result, they qualify as an exercise of the safety regulatory authority of Missouri with respect to motor vehicles and fall within the safety exemption of the FAAAA. The Motion for Judgment on the Pleadings should be denied for these reasons.

### 2. Brokering Claims Are Insufficiently Related

Although the Motion for Judgment on the Pleadings can be denied on the basis of the safety exemption alone, Plaintiffs submit that it should also be denied because negligent brokering claims are only tenuously related to broker services and therefore do not meet the requirements for preemption under 49 U.S.C. ¶14501(c)(1). *Uhrhan* found that relationship sufficient, but subsequent decisions provide a contrary and better reasoned perspective. *Ciotola*, at 22-28. Earlier  decisions also found the relationship inadequate - *Gilley, Nyswaner, Hentz, Scott, Factory, and Mann.*

Whether negligent brokering claims fall within the scope of FAAAA preemption turns on whether holding a broker to a standard of reasonable care significantly or only tenuously impacts the prices, routes, or services of a broker. *Ciotola*, at 16; *Gilley*, at 3; *Nyswaner*, at 4; *Mann*, at 5-6 The Supreme Court has held that state laws having "a connection with or reference to" these areas are preempted but that laws which affect them "in only a tenuous, remote or peripheral manner" are not. *Dan's City Used cars, Inc. v. Pelkey* 569 U.S. 251, 260-261 (2013). The "state laws whose "effect" is

7

"forbidden" … are those with a "significant impact" on carrier rates, routes, or services." *Rowe v. New Hampshire Motor Transport Ass'n* 552 U.S. 364, 375 (2008).

Other than alleging a "substantial and adverse impact" on broker services, RTS provides no basis for the court to draw that conclusion.  It fails to identify or quantify the impact, cite to facts cognizable on a motion for judgment on the pleadings or demonstrate that the impact would genuinely obstruct federal deregulation of the trucking industry. It also fails to conduct a serious impact analysis and instead relies on repetitive conclusions and speculation.  The cases cited by RTS suffer from the same defect, they assume a significant economic impact when the claim is deemed related without conducting an impact analysis and without explaining how the conclusion was reached or how the impact frustrates deregulation.[6] *Ciotola*, at 27. RTS has the burden to prove preemption with specificity, and it fails to meet that burden. *Lupian*, at 134; *Ciotola*, at 27; *Factory*, at 9.

Contrary to RTS's argument, the connection between tort law and broker services is tenuous rather than significant, and this is apparent in several ways. First and foremost, Missouri's common law duty of care is not an economic regulation. It does not mention or target broker prices, routes, or services, and it does not impose on the broker a particular price, route, or service. *Ciotola*, at 23, 25, 29  It does not impose barriers on entry into the industry, and it does not levy tariffs or restrict the property a

---

[6] *Midwest* at 897 (summary judgment property claim); *Volkova* at *3-4* (motion to dismiss injury claim); Loyd at 5-6 (motion to dismiss injury claim); *Creagan* at 4-5 (motion for summary judgment/motion for judgment on pleadings injury claim); *Krauss* at 4-5 (motion to dismiss injury claim); *Miller* at 4 (motion for judgment on the pleadings injury claim; speculatively refers to demands beyond what "appears" to be currently required in the marketplace and to consequences those demands "surely" would impose).

8

carrier may transport. *Ciotola*, at 25. It addresses resource inputs and not industry outputs and thereby avoids interference with the competitive forces the FAAAA intended to preserve. *Bedoya v. American Eagle Express, Inc.* 914 F.3d 812, 822 (3d Cir. 2019); *Ciotola*, at 19; *Lupian*, at 134 (focusing on the competitive forces of the market leads to a more accurate assessment of Congressional intent).

Even if imposing a duty of ordinary care could have some indirect cost to a broker that is passed on in prices, something RTS has failed to establish, the impact is not perceived significant enough to interfere with Congress' goal of deregulation. *Ciotola*, at 24, 26-27 (quoting *Bedoya*); S.C. *Johnson & Son v. Transp. Corp. of Am. Inc.* 697 F.3d 544, 558-559 (7th Cir. 2012) ("an effect on price may be necessary for preemption, but it is not sufficient" when the effect is too tenuous or remote.)  It certainly does not interfere with competition through "public-utility-style regulation" as some cases suggest is necessary, and for that reason the impact is too tenuous to be preempted.  *Ciotola*, at 16; *Lupian*, at 134.

The common law of reasonable care is generally applicable to all persons and to all businesses; it is part of the backdrop of laws that all members of society must follow in conducting their affairs. *Ciotola*, at 23-24; *Mann*, at 6.  It has been held that "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate policies, routes, or services." *Dilts v. Penske Logistics, LLC.* 769 F.3d 637,644-646 (9th Cir, 2014). Even if those rules increase or change operating costs, "broad laws applying to hundreds of different industries with no other forbidden connection with …services…are not preempted by the FAAAA." *Dilts*, at 647; *Ciotola*, at 23-24; *Factory*, at 9  Although general applicability

9

is not dispositive, "it is a relevant consideration because it will likely influence whether the effect on prices, routes, and services is tenuous or significant." *California Trucking Ass'n v. Su* 903 F.3d 953, 966 (9th Cir. 2018); *Nyswaner*, at 4.

Contrary to RTS's argument, allowing Mendoza's negligent brokering claim to proceed would not create a patchwork of state regulations. The duty to act with reasonable care has its origins in the common law of virtually every state and the impact of it is determined more by facts than by differences in the law. Here it would only require RTS, like every other enterprise, to conform to the general duty of care in the conduct of its business, including hiring trucking companies to deliver goods. *Nyswaner*, at 4; *Factory*, at 7.  In the similarly phrased ADA, Congress "intended to insulate the industry from possible state economic regulation", but not to "immunize the [industry] from liability for…injuries caused by their tortious conduct". *Charas v. Trans World Airlines, Inc.* 160 F.3d 1259, 1266 (9th Cir. 1998); *Nyswaner*, at 4.

For all these reasons, RTS has failed to establish that holding brokers to a standard of reasonable care significantly impacts prices, routes, or services. As a result, the negligent brokering claim does not fall within the scope of federal preemption, and the Motion for Judgment on the Pleadings should be denied.

**C.**     **<u>Vicarious Liability Claims Are Not Preempted</u>**

The argument that vicarious liability claims are also preempted by the FAAAA ignores the statute and the case law. The preemption clause prohibits state regulation of broker services which includes "arranging for transportation". 49 U.S.C. ¶14501(c)(1) and ¶13102(2). Preemption is sought in negligent brokering because the claim seeks to hold the broker responsible for its actions as a broker, with the debate being whether

10

the impact of state tort law on broker services is substantial or tenuous. (see argument above). Vicarious liability, on the other hand, by definition, seeks to hold the broker responsible for the actions of the driver and the motor carrier. *Ying Ye*, at 4. The acts on which the vicarious claim is based relate entirely to negligent operation of the motor vehicle and not to broker services. *Lopez*, at 5.  RTS admits that broker services do not include the operation of motor vehicles or the actual transportation of property, but rather are 'focused on arranging how others will transport the property." RTS Brief p.11; *Lopez*, at 5; *Finely*, at 6.  RTS's attempt to provide facts outside the complaint to support a connection to broker services is improper on a motion under Rule 12(c) and those facts should be disregarded. RTS Brief p.11; *Bates v. Green Farms Condominium Assn.* 958 F.3d 470, 483  (6th Cir. 2020) (decision must focus only on allegations of complaint).[7]

     Vicarious claims for negligent driving are so obviously unrelated to broker services that the majority of reported cases do not even make the challenge. Of the fourteen cases identified above, only three substantively address vicarious preemption. *Lopez*, at 5; *Ying Ye*, at 4; *Finely*, at 6 (suggesting without deciding).  Most decisions note the pendency of both vicarious and brokering claims, but the preemption challenge is raised only to the claim for negligent brokering. The few cases that expressly address preemption of vicarious liability reject the argument for the reasons outlined above. *Lopez* at 5; *Ying Ye* at 4; Finely at 6.

---

[7] In fact, RTS's request to look outside the Complaint only further demonstrates why this argument should fail at this stage and is more proper for the Court to consider at the summary judgment stage and/or for a jury to determine at trial. In fact, Plaintiffs could provide the Court right now evidence that RTS is identified as the motor carrier under the Bills of Lading and therefore legally accepted the load and is vicariously responsible under federal regulations.

Neither *Creagan* nor *Gillum* relied on by RTS are cases which substantively address vicarious preemption. *Creagan*, in a footnote, preempted the vicarious claim, not because negligent driving allegations implicate broker services, but because the complaint alleged no agency facts except selection of the motor carrier, the essential fact in negligent brokering. *Creagan*, at 7. This caused the court to preempt the vicarious claim along with the brokering claim because both turned on arranging the transportation. *Creagan*, at 7. *Gillum* likewise pled both agency and brokering claims, but the preemption decision addressed only the brokering claim, specifically stating that "negligence by brokers in selecting motor carriers" was "the very issue presented in this case." *Gillum*, at 3-5. These cases are not vicarious preemption cases and citing them as such is misleading.

Preemption does not apply to vicarious claims for another reason. Whatever debate there may be about application of the safety exception to negligent brokering, the exception plainly covers operation of the motor vehicle by the motor carrier. *Ying Ye*, at 4. Because Congress excluded from preemption conduct related to actual operation of the vehicle, it follows that a principal can be held liable for an agent's negligent driving. *Yang Ye*, at 4  Consequently, the safety exception preserves negligent driving claims brought against a broker under vicarious liability.

For all these reasons, the vicarious claim does not relate to the broker's "rates, routes or services" and/or it is preserved by the safety exception, and for both reasons preemption does not apply. *Lopez* at 4-6; *Ying Ye* at 4.

Lastly, in arguing that the vicarious claim is preempted "even if Plaintiffs had alleged RTS controlled BSB and Singh through communications and directives as a

freight broker", RTS alludes to an alleged lack of facts to support vicarious liability. (RTS Brief p. 12) This is made in a single sentence at the end of the brief without citation of authority. Plaintiff does not interpret this to be a separate challenge to the sufficiency of the complaint but will nonetheless be seeking leave to file a Second Amended complaint.

This case was transferred from the Northern District of Illinois to the Eastern District of Missouri. The First Amended Complaint joining RTS was filed in Illinois under Illinois law. Count III alleges that RTS acted as a "broker" and/or a "motor carrier." Bills of Lading produced by RTS in discovery identify RTS as the motor carrier and show that RTS acted as a motor carrier and legally accepted the load as a motor carrier.  Count IIII sufficiently alleges that RTS hired, retained and/or contracted BSB and/or Singh, that BSB and/or Singh operated their vehicle in the capacity of agent, servant and/or employee pursuant to F.M.C.S.R 49 C.F.R 390.3(b), and that RTS is vicariously liable for the actions of these agents, including as a motor carrier (not as a broker)

## Conclusion

The overwhelming weight of authority, and the better reasoned decisions, including the Eastern District of Missouri in *Uhrhan* hold that the FAAAA does not preempt common law tort actions against a broker for negligent hiring or for negligent driving based vicarious liability. In light of these decisions, Plaintiff respectfully requests that RTS's Motion for Judgment on the Pleadings be denied.

        KINNALLY FLAHERTY
        KRENTZ LORAN HODGE & MASUR, P.C.


        BY:    /s/    PATRICK M FLAHERTY


Patrick M. Flaherty, Esq. (#3122931)
Kinnally Flaherty
Krentz Loran Hodge & Masur, PC
2114 Deerpath Road
Aurora, IL 60506
630-907-0909
630-907-0913 (fax)
pflaherty@kfkllaw.com

| | |
|---|---|
| **From:** | Weisenbach, Michael |
| **To:** | Patrick M Flaherty |
| **Cc:** | MBrooker@ma2zlaw.com; Heusohn, Michele; Szedlar, Elaine; Stuart White |
| **Subject:** | Re: Mendoza v. BSB Transport // RTS initial disclosures |
| **Date:** | Friday, September 11, 2020 11:15:15 AM |

That's fine with me, Pat. Our reply date will run from the date you file your response.

Mike

Michael Weisenbach
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
101 West Vandalia Street
Suite 220
Edwardsville, IL 62025
618.307.4972 (Direct)
618.606.0710 (Cell)
618.307.0200 (Main)
618.307.0221 (Fax)
michael.weisenbach@wilsonelser.com

> On Sep 11, 2020, at 10:37 AM, Patrick M Flaherty <pflaherty@kfkllaw.com> wrote:

**[EXTERNAL EMAIL]**

Hi Mike:

My response to your motion is due on Monday, 9-14-20. Any objection if I file it on Friday, 9-18-20?

Thank you for your consideration.

Pat Flaherty

Patrick M. Flaherty
Kinnally Flaherty
Krentz Loran Hodge & Masur PC
2114 Deerpath Road
Aurora, IL 60506
630-907-0909
630-907-0913 (fax)
www.kfkllaw.com

**From:** Weisenbach, Michael <Michael.Weisenbach@wilsonelser.com>
**Sent:** Monday, June 8, 2020 3:27 PM
**To:** MBrooker@ma2zlaw.com; Patrick M Flaherty <pflaherty@KFKLLAW.COM>

Exhibit B

**Cc:** Heusohn, Michele <Michele.Heusohn@wilsonelser.com>; Szedlar, Elaine <Elaine.Szedlar@wilsonelser.com>
**Subject:** Mendoza v. BSB Transport // RTS initial disclosures

Matt and Pat,

Attached are RTS's initial disclosures.  Please let me know if you do not consent to email service.  If you do not consent, I'll have my office mail a hard copy tomorrow.

Best,

Mike

Michael Weisenbach
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
101 West Vandalia Street Suite 220
Edwardsville, IL 62025
618.307.4972 (Direct)
618.606.0710 (Cell)
618.307.0200 (Main)
618.307.0221 (Fax)
michael.weisenbach@wilsonelser.com

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly
prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately
by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer
to
any of our offices.
Thank you.

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.
Thank you.

| | |
|---|---|
| **From:** | Weisenbach, Michael |
| **To:** | Patrick M Flaherty |
| **Cc:** | Sara Harrigan |
| **Subject:** | Re: Mendoza |
| **Date:** | Thursday, September 17, 2020 5:44:36 PM |

Agreed.

Michael Weisenbach
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
101 West Vandalia Street
Suite 220
Edwardsville, IL 62025
618.307.4972 (Direct)
618.606.0710 (Cell)
618.307.0200 (Main)
618.307.0221 (Fax)
michael.weisenbach@wilsonelser.com

On Sep 17, 2020, at 5:27 PM, Patrick M Flaherty <pflaherty@kfkllaw.com> wrote:

**[EXTERNAL EMAIL]**

Hi Mike:
A contractor severed the power to our office early yesterday morning. We have been without water, lights, and computers until a few minutes ago. Staff will be back in tomorrow. Any objection if my response gets filed by Monday, with a reciprocal extension for you to reply? Thanks.

Pat Flaherty

Patrick Flaherty
Kinnally Flaherty
Krentz Loran Hodge and Masur P.C.
2114 Deerpath Rd.
Aurora, Illinois 60506
630-907-0909 (p)
630-907-0913 (f)
www.kfkllaw.com

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.

```
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.
```
Thank you.

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click [here](#) to report this email as spam.